## KLEIN v. WILSON & CO., Inc.

(District Court, D. New Jersey. September 11, 1924.)

**1. Corporations ⬪65—Situs of stock under New Jersey statute stated.**

Under the Uniform Transfer Act of New Jersey, regulating the transfer of stock certificates and providing that such transfer shall be by delivery of the certificate indorsed or with an assignment by the person therein named as owner of the shares represented thereby, and that such provisions shall be applicable, though the charter provides for transfer only on the books of the corporation, the situs of stock of a New Jersey corporation is where the certificates therefor are held.

**2. Corporations ⬪684—State court held without power to appoint general receiver for foreign corporation.**

A court of New Jersey is without power to appoint a general receiver in insolvency, under the statutes of that state, for a New York corporation which has no property in the state.

Order affirmed 7 F.(2d) 777. See, also, 7 F.(2d) 772.

Lindabury, Depue & Faulks, of Newark, N. J., for the motion.

William Harris, of Newark, N. J., opposed.

RUNYON, District Judge. This action was originally instituted in the Court of Chancery of New Jersey, and, on defendant's motion, removed to this court. The complainant therein is Maurice I. Klein, of Newark, N. J., who claims to be the owner of 25 shares of stock in the defendant corporation, and who brings a suit on behalf of himself and all other stockholders and creditors who may join him and contribute to the expenses of the litigation.

The purpose of the suit, as revealed in the bill of complaint, is to secure the appointment of a receiver for the defendant corporation, to terminate its affairs and distribute its assets among creditors and stockholders.

The bill of complaint goes into a wealth of detail as to the capital stock of the corporation, the securities owned by it, the nature of its funded debt, its operations during the past 4 or 5 years, and many other matters, all of which evidence a studied and painstaking preparation and a very considerable acquaintance with many of the conditions of defendant's business although the allegations are made upon "information

7 F.(2d)—49

and belief" only. In this connection it is pertinent to note the allegations contained in three paragraphs of the bill of complaint which without doubt were influential in the procurement of the order to show cause and the appointment of a custodial receiver.

Paragraph 4, in part says: "Defendant owns and operates a half dozen or more meat packing and distributing stations in the state of New Jersey, in the cities of Jersey City, Elizabeth, Atlantic City, state of New Jersey, and in other cities, and there is due a large sum of money to defendant corporation from its customers in the state of New Jersey, the exact amount whereof is unknown to complainant."

Paragraph 12 of said bill charges that "on June 1, 1924, there came due the sum of about $400,000 to the holder of defendant's 6 per cent. convertible bonds, and defendant did not have the cash with which to pay said installment"; * * * while paragraph 13 charges that "on August 1, 1924, there fell due the semiannual interest installment of about $345,000 on defendant's 7½ per cent. convertible bonds, which installment was not paid because defendant corporation did not have the funds with which to pay same."

In addition thereto, the complaint in the affidavit attached to the bill of complaint says: "I know of my own knowledge that defendant corporation maintains and operates at least four warehouses or distributing stations in the state or New Jersey, to wit, at Elizabeth, Jersey City, Atlantic City, and Passaic, N. J. * * * "

The order of the Vice Chancellor, made upon the filing of the bill, and without notice to the defendant, required it to show cause why (a) an injunction should not issue pursuant to the prayer of the bill; (b) a receiver should not be appointed to take charge of all the property and assets of the defendant company, pursuant to the provisions of the New Jersey statute regarding insolvent corporations; (c) the complainant should not be permitted to inspect all of the property and estate, books and papers of the defendant; and (d) a master should not be appointed with power to investigate the corporation's affairs.

The order also enjoined the defendant until the further order of the court from disposing of or incumbering any of its assets except in the usual course of business, appointed a receiver to take possession of the property and assets of the defendant and to conserve and retain the same until the fur-

ther order of the court, and provided that the receiver might, in his discretion, continue the defendant's business until the further order of the court.

The motion now made by defendant is to vacate the order to show cause, to discharge the receiver therein appointed, and to lift the restraint contained therein; and in support of said motion are submitted the original bill of complaint and the complainant's affidavit attached thereto, as well as the answering affidavits of Thomas E. Wilson, president of the defendant corporation, and of Frank O. Wetmore, chairman of the bank creditors' committee.

The Wilson affidavit sets forth that the defendant is a New York corporation, originally incorporated in 1910 under the name of Sulzberger & Sons Company, changing its name to Wilson & Co. in 1916; furthermore that the defendant has never qualified to do business in New Jersey, and has not, at any time, done business in this state or maintained any office or place of business here, but that two other companies, Wilson-Martin Company, a Delaware corporation, a majority of the stock of which is owned by defendant, and Wilson & Co., a New Jersey corporation, the stock of which is owned by the New York corporation, own and operate certain rendering and distributing stations in New Jersey.

Mr. Wilson further states that the principal office of the company is in New York City, where its stockholders' and directors' meetings are always held, that the company owns controlling stock in numerous subsidiary and affiliated corporations in various parts of the United States, and that during 1923 the gross sales of all the combined companies aggregated approximately $275,000,-000, and that it has approximately 7,000 stockholders.

The affidavit admits business losses during the years 1921 and 1922, due to slack business and postwar conditions, but claims that during 1923 the combined companies showed gross profits of more than $7,000,-000, and net profits of $2,450,866.43; further setting forth that estimates for the current year showed the prospect of a fair amount of net profits.

The claims of ownership and operation of several meat packing and distributing stations in New Jersey, set forth in paragraph 4, as well as the claims of passed interest payments, set forth in paragraphs 12 and 13 of the bill of complaint, the affidavit specifically denies, as it does also the statement in paragraph 8 of said bill regarding the amount of outstanding convertible gold 6 per cent. bonds due December 1, 1928.

Mr. Wilson goes on to recite the various steps which had been taken for the raising of additional capital since February, 1924, including the formation of a banking creditors' committee in April, 1924, and that this committee had already secured the consent of more than 95 per cent. of the outstanding paper to an extension of time proposed by said committee, and was working in co-operation with a committee representing the holders of debenture bonds and the officials of the defendant, working out a plan of readjustment of the defendant's financial affairs, and making substantial progress in their work. A preferred stockholders' committee was also being formed to join in this project, and, the affidavit further states the company's officers hoped that a plan of readjustment could be effected without the intervention of a receivership.

Mr. Wilson makes positive denial that the statement of a forthcoming receivership, as charged in paragraph 23 of the bill of complaint was authorized by any representative of the defendant, and further says that on August 23, 1924, there were no plans on foot for the appointment of a receiver. This was the day when upon complainant's application, the Vice Chancellor appointed a receiver and issued the order to show cause.

He also denies that complainant at any time instituted receivership proceedings in the Southern District of New York, as in his bill of complaint he stated he was about to do, and then proceeds to set forth the various ways in which the defendant company was injured through the institution of the New Jersey Chancery Court proceedings, alleging such injury to be "great and irreparable," in that "the mere announcement thereof immediately paralyzed its business and made necessary the suspension of its live stock purchases." Furthermore, he says that as a consequence of the announced appointment of a New Jersey receiver, the defendant's financial situation became so acute as to make imperative the appointment of a domiciliary receiver with ancillary receiverships in the various states where the defendant was doing business, in order to protect the interest of all concerned against further loss.

He thereupon contends that the defendant is solvent, and has property and assets which at a fair valuation exceed the amount of its liabilities, and alleges that, since the

various receivers, domiciliary and ancillary, were appointed, they are conducting the business of the defendant as a whole to the best possible advantage of its creditors and stockholders.

Mr. Wetmore's affidavit alleges his familiarity with the financial standing of the defendant company and his belief that everything said by Mr. Wilson is true. He then goes on to recite the steps taken by the creditors to extend the defendant company's term of credit, alleging that substantial progress had been made toward working out a voluntary plan of readjustment, and that their hopes in that respect were entirely upset by the appointment of the New Jersey Chancery Court receiver.

[1] A consideration of this whole matter, based upon an examination of the papers heretofore filed in the New Jersey Court of Chancery, and of those since filed in the federal court for the Southern District of New York, leads me to the conclusion that, without a discussion of other considerations or questions, the fact that duly qualified receivers have been appointed by the federal court in the Southern District of New York, and ancillary receivers in the various states where the defendant has property, makes it not only unnecessary but improper, under the conditions which I believe exist in this state, to maintain any form of receivership in New Jersey, for I am of the opinion that the New York corporation neither owns property nor does business in the state of New Jersey, and that under those circumstances there is nothing for a New Jersey receiver to take under his charge. The contention is made by complainant that the situs of the stock of Wilson & Co., the New Jersey corporation, owned and held by the defendant company, is in New Jersey, and that therefore such stock constitutes property within this state and subject to New Jersey receivership control. I cannot so consider it, but believe that the situation created as above is governed by the provisions of the Uniform Transfer Act of New Jersey (chapter 191, Laws of 1916), which regulates the passage of title of stock certificates and is as follows:

"Title to a certificate and to the shares represented thereby can be transferred only—

"(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or

"(b) By delivery of the certificate and a separate document containing a written as-signment of the certificate or a power of attorney to sell, assign or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person.

"The provisions of this section shall be applicable although the charter or articles of incorporation or code of regulations or by-laws of the corporation issuing the certificate, and the certificate itself, provide that the shares represented thereby shall be transferable only on the books of the corporation or shall be registered by a registrar or transferred by a transfer agent."

Under these provisions I conceive the stock certificates to be more than mere evidence of interest in property, and to be the concrete physical representation of such interest, possessed of such characteristics and qualities as necessitates an actual delivery thereof in order to transfer title to the certificates themselves and the shares represented by them. This being the case, they are properly within the jurisdiction of, as they are doubtless in the possession of, the domiciliary receivers, and quite beyond any claim which might be asserted by a receiver appointed under any New Jersey authority, state or federal.

[2] It is all of this, taken in connection with the specific sworn denial of the president of the defendant company that the corporation either owns property or does business in New Jersey, which determines my conclusion.

As bearing upon the general situation relating to the institution of this suit in the Court of Chancery, with all of its attendant circumstances, the following opinion of Judge Swayze, speaking for the New Jersey Court of Errors and Appeals in the case of McDermott v. Woodhouse, 87 N. J. Eq. 615, 101 A. 375, is largely in point:

"The bill is a most extraordinary one. It is a bill filed by a receiver in insolvency of a New York corporation, who was appointed by our Court of Chancery, and seeks to establish a stockholder's liability for stock issued for property purchased, as is said, at a gross overvaluation. We pass over the informal statements contained in the bill, and put upon it the best face possible. The corporation itself is not made a party. There is nothing to show that a receiver has even been appointed in New York, the domicile of the corporation. Nothing is averred in the bill which would justify our courts in appointing a receiver in insolvency of a New

York corporation. The draftsman seems to have conceived the notion that under our statute a receiver in insolvency can be appointed for a foreign corporation by the same procedure that is authorized in the case of a New Jersey corporation. We mention these difficulties because they are of so fundamental a character that we ought not to pass them unnoticed and thereby appear to justify what seems by the averments of the bill to have been an unwarranted interference by our courts in the internal affairs of a foreign corporation. Probably the proceedings for a receiver were ex parte, and the attention of the court was never called to the fact that the corporation was not a New Jersey corporation. The matter is important. The bill seeks to do what can only be done by a receiver in case he possesses all the powers of a statutory receiver in insolvency, and shows on its face that the utmost powers he could have would be those of a mere ancillary receiver to gather in the assets in this state. * * * This cannot be done in a forum where only an ancillary receivership is possible. It must be done in the forum of the domicile. * * * Our courts cannot force a New York creditor of a New York corporation to submit his claim to our tribunals under penalty of losing all right to participate in the distribution of the assets. It is manifestly quite as necessary to ascertain the total assets of the corporation as its total liabilities in order to fix the amount needed to pay creditors, and these assets can only be finally ascertained in the courts of the domicile to which assets may be remitted by courts of other forums acting through ancillary receivers."

Ample justification for my disposition of this matter appearing to me to exist in my determination that there is nothing in New Jersey for a receiver of any sort to conserve or administer, a discussion of the other points argued at the hearing upon the motion appears unnecessary.

In conclusion, however, I must give expression to a sense of poignant regret that the complainant herein should have been advised that his safety as a stockholder demanded such a course of action as he has lodged against the defendant corporation— a course which has perilously jeopardized, not only his own security but that of 7,000 other stockholders, great and small; that such interpretation of conditions was presented in the bill of complaint, upon the original application herein, as to persuade the Vice Chancellor that circumstances were essentially different and much worse than the sworn statements of those who knew the facts show them to be.

The affairs of the company left much to be desired, it is true, as the answering affidavits admit, but there were remedial plans in process of fulfillment, the existence of which might have been easily ascertained, and which were receiving the support of the largest and most substantial creditors. Had uninterrupted pursuit of these plans been possible, it is entirely conceivable that the defendant company might have been able to survive the stress of recent financial conditions, and, whether or not such were the case, it would at least have had the decent chance to work out its salvation, to which every lawful business, whatever be its magnitude, is entitled.

In short, it appears to me that this whole, critical situation has been brought about through the agency of a suit which a New Jersey stockholder really had no right to institute in a New Jersey court, by reason of the fact that there was no New Jersey property to take possession of and administer.

I am therefore of the opinion that the order to show cause granted herein by the Court of Chancery should be vacated, the receiver appointed in said order discharged, and the restraint heretofore imposed be lifted.

An order in accordance with the foregoing may be presented.