HERMAN G. MULOCK, PLAINTIFF, v. B. GEORGE ULIZIO, DEFENDANT.

Argued October 7 and 8, 1925—Decided January 21, 1926.

Under section 13 of "An act to make uniform the law of transfer of shares of stock in corporations" (*Pamph. L.* 1916, *p.* 401), and assuming the constitutional validity of that section, a levy upon shares of corporate stock for which a certificate is outstanding, is not valid, unless and until such certificate be actually seized by the officer making the levy, or be surrendered to the corporation that issued it, or its transfer by the holder be enjoined.

On petition to set aside sale under execution.

Before Justices PARKER, MINTURN and BLACK.

For the petitioner, *Carr & Carroll.*

For the respondent Herman G. Mulock, *McCarter & English (Robert H. McCarter, pro se).*

The opinion of the court was delivered by

PARKER, J.  This is a controversy between execution creditors with respect to priority of lien as against certain shares of stock in the Finance Company of New Jersey. The questions involved relate to the validity of levies. The Mulock judgment was prior in date and the execution the first to be placed in the hands of the sheriff. Two subsequent executions are involved, one of the suit of Van Sciver Company and another at the suit of Congezer & Son, both of whom were represented by the same counsel. Petitioner Morales, as a purchaser under the executions of Van Sciver and Congezer, has filed a petition to this court in the Mulock case, claiming a prior right to the stock as against Robert H. McCarter, the purchaser under the Mulock execution.

For Mr. McCarter it is argued at the outset that this proceeding is irregular because it comes too late, in that the

Mulock execution has ripened into a sale, a purchase by him and a perfected bill of sale, and that, after this has taken place, the only remedy is in equity. We have not taken time to examine this. matter, preferring to decide the case upon the merits. It will therefore be assumed for present purposes that Morales, the petitioner, has a proper standing on this application.

The real question is the validity of the respective levies. In dealing with this, a short statement of the facts in order of time is necessary.

The shares were the property of the defendant, Ulizio, and at the time of the Mulock judgment and thereafter were pledged in the possession of the Equitable Trust Company. The execution in the Mulock suit was tested February 1st, 1924, returnable March 18th, 1924. It was delivered to the sheriff promptly, and on February 4th the sheriff undertook to make a levy thereunder. He went to the principal office of the finance company with the execution and gavè the usual notice of the judgment and execution, and declared that he levied on the stock standing in the name of Ulizio. This was all that was done at that time, and nothing further was done before the return day of the execution, March 18th. Subsequently, on July 5th, the two executions of Van Sciver and Congezer were delivered to the sheriff, and, on July 9th, the sheriff, acting under instructions from counsel, proceeded to make another levy under all three executions in the manner dictated by counsel. This was evidently based upon the provisions of section 13 of the statute of 1916 (*Pamph. L., p.* 401), which provides that "no attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder be enjoined." What the sheriff did on this occasion was to go to the office of the Equitable Trust Company, the pledgee, and arrange for the production of the certificate and its exhibition to him. He then took it into his hands, and at three-ten P. M. announced

that he levied upon the said certificate of stock by virtue of the execution in the Mulock case. The certificate was then redelivered to the official of the finance company, and at three-twelve the sheriff again took it into his hands and announced that he levied upon it under the execution in the Van Sciver case, and redelivered it to the company. At three-fourteen he again took it into his hands and announced that he levied upon it by virtue of the execution in the Congezer case, and once more redelivered it to the official of the finance company, whereupon it was put back into the finance company vaults, and has there since remained.

The argument for the petitioner is that there was no effectual levy under the Mulock execution at any time; none of February 4th, because there was no manual caption of the certificate by the sheriff; none on July 9th, because, under the well-recognized rule, the return day having passed, the execution had lost its force. Mr. McCarter, the purchaser under the Mulock execution, retorts that Mr. Morales acquired no rights with reference to the stock (which the sheriff later undertook to sell to him subject to any rights of Mr. McCarter), first, because the act of 1916 in the respect in which it is invoked is unconstitutional, because the object of the act is not expressed in its title, and secondly, because even if the act be constitutional, there was no such seizure by the sheriff of the stock as contemplated by section 13 of the act.

We find it unnecessary to go into the constitutional question. The act is, perhaps, open to some criticism in matters of construction, and it may be at least colorably argued that a title reading "An act to make uniform the law of transfers of shares of stock in corporations" does not fairly embrace in its title regulations intended to deal with the transfer of title *in invitum* by execution, judicial sale, injunction or otherwise. Asssuming, however, that its constitutionality cannot be successfully impugned, as to which we express no opinion, we are, nevertheless, clearly of the view that the levies attempted to be made under the Van Sciver and Congezer judgments and executions were nugatory. The

stock was in the hands of the pledgee, and legally so. Section 13 of the statute requires that there be a seizure by the sheriff, and expressly provides that no levy shall be valid unless the certificate be actually seized by the officer or surrender to the corporation. It is true that under our old law the sheriff could make a levy upon chattels without taking them away, and may leave them in the custody of the defendant until the day of sale (*Cumberland Bank* v. *Hann,* 19 *N. J. L.* 166), but this is exactly what the statute of 1916 appears to negative, for it provides, as we have already said, that no levy upon shares for which a certificate is outstanding shall be valid until the certificate be actually seized by the officer or surrendered to the corporation which issued it. The alternative is significant, because it necessarily involves a parting with the manual possession of the certificate to the corporation which issued it, and this is a fair alternative only to a parting with the actual possession of the certificate to the sheriff.

The result we reach, therefore, is this: If the act of 1916 is ineffective to change the pre-existing law, it is quite plain that the first McCarter levy was good. *Princeton Bank* v. *Crozer,* 22 *N. J. L.* 383, 386; *Voorhis* v. *Terhune,* 50 *Id.* 147, 160. If the act of 1916 has changed the pre-existing law, no effectual levy was made thereunder. In neither event has Morales, the petitioner, a superior title to McCarter. The prayer of the petition is that an order be entered adjudging the sale of nine shares under the Mulock execution to be invalid as against the petitioner, and that said McCarter take no right or interest whatsoever by virtue of said alleged sale. That prayer will be denied, with costs.