Common Pleas Court of Hamilton County.

HOTEL GIBSON CO. V. CINO THEATRE CO., ET AL.

Decided October 4, 1932.

*Dolle, O'Donnell & Cash,* for the plaintiff.

*Ulmer, Berne & Gordon* and *Peck, Shaffer & Williams,* for the Radio-Keith-Orpheum Corporation.

*Kunkel & Kunkel,* for the Cino Theatre Company.

BELL, J.

In this suit for damages an affidavit for attachment and garnishment against the Radio-Keith-Orpheum Corporation was filed on the ground of non-residence and writ of attachment and garnishment issued and served upon the RKO Distributing Corporation and RKO Midwest Corporation. The Sheriff's return showed no goods attached and the RKO Distributing Corporation, by answer, averred it had nothing to attach.

The answer of RKO Midwest Corporation states that it executed a note to Radio-Keith-Orpheum for over two and one half million dollars, which note had been transferred to the Chemical Bank & Trust Company of New York; and that Radio-Keith-Orpheum held in its possession in New York City a certificate of stock for 2,500 shares of RKO Midwest Corporation.

The Radio-Keith-Orpheum Corporation has filed a motion to quash the garnishment and the service of notice by publication made under Section 11292-7 of the General Code, which reads:

"Service may be made, by publication in any of the following cases:

In an action in which it is sought by a provisional remedy to take or to appropriate in any way *property* of the defendant, when the defendant is not a resident of this state, or is a foreign corporation * * *.''

In *Cooper* v. *Reynolds,* 10 *Wall* 308 at 318, it is stated:

"The court can not proceed unless the officer finds some property of defendant on which to levy the attachment. A return that none can be found is the end of the case and deprives the court of further jurisdiction, though the publication may have been duly made and proven in court." (See also *Pennoyer* v. *Neff,* 95 U. S. 714 at 723-4).

To determine the merits of this action it is necessary to consider whether any *property* of defendant was seized by the Sheriff, or shown to be within the county.

Taking up first the stock mentioned: The Uniform Stock Transfer Act, Section 8673-13, General Code, reads:

"No attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder be enjoined."

It is conceded that prior to the passage of this Act in 1911, under the rulings of our Supreme Court (*Bank* v. *Ry. Co.* 21 O. S. 221, *Norton* v. *Norton,* 43 O. S. 509, *Ball* v. *Towle,* 67 O. S. 306) a non-resident stockholder of an Ohio corporation had property subject to garnishment,

even though the certificate was without the jurisdiction of the court, the theory being that the shares of stock were the real property and the certificate only the *indicia* of title. In *Cassidy* v. *Ellerhorst*, 110 O. S. 535, (an inheritance tax case) this doctrine was repeated on p. 544, the court citing the Ball case and *State* v. *Davis* 85 O. S. 43, as authorities. In the Ball case, decided in 1902, the court quoted extensively, p. 314, from Cook on Stocks and Stockholders:

"Section 485: * * * such certificates when issued to the owner of the share of stock is merely an evidence or acknowledgement of the owner's interest in the property of the corporation, but is not the property itself."

"Section 480: It has been held that if a stockholder whose stock has already been attached or sold on execution sells his certificate of stock after the levy of such attachment or execution, the vendee or transferee buys subject to such levy, even though he had no knowledge of it. The stock in contemplation of law has already been seized by the levy, and the purchaser is bound to take notice of that fact. The only means of avoiding this danger in the purchase of stock is by an inquiry at the office of the corporation at the time of making the purchase."

After repeating this language of Section 480 in Cook on Corporations, published in 1923, 8th Edition, Vol. 11, Section 486, the author goes on to say, however:

"Sec. 488, p. 1620: The Courts of Massachusetts were among the first to lay down the rule which places an attachment or execution levy ahead of an unregistered purchaser of the certificate of stock. The evil consequences of the rule, however, seem to have become apparent to her courts. * * * The Legislature seems to have had a still clearer perception of the demands of trade, and of the interests of those who invest in certificates of stock, and in 1884 enacted a statute which made an attachment or execution levied on stock no more effective than in New York State. * * * In Wisconsin there is the commendable Uniform Stock Transfer Act that no attachment or levy on stock shall be valid unless and until the certificate is seized or its transfer enjoined."

That the passage of the Act altered the previous rulings is best exemplified by New Jersey. In 59 Atl. Rep. 22,

*Cord* v. *Newlin,* decided November 14, 1904, the Supreme Court of that state held:

"A share of corporate stock * * * was capable of being attached under our statute. The fact that the certificate of stock is outside of the state can not disturb this conclusion. The certificate is only evidence of title to the right."

Subsequently, in 1916, the Uniform Stock Transfer Act was passed by that state and in two cases cited by counsel for the motion, *Mullock* v. *Ubizo,* 131 Atl. 622, and 131 Atl. 81, *Wallach* v. *Stern,* the Supreme Court upheld the provisions of the Act above cited.

"* * * an attempted levy by serving the execution at the office of the corporation, without a manucaption of the certificate, and without any surrender or injunction as contemplated by the statute, would not suffice to pass title at the execution sale."

Examination discloses that the Wallach case was reviewed by the Court of Errors and Appeals of New Jersey, not only on the point cited but upon its constitutionality and that court, on January 31, 1927, unanimously affirmed the court below; 136 Atl. 209:

"The act is one of a number recommended by the American Bar Association to the various State Legislatures, and upon such sponsor it was adopted by our own Legislature. * * * Shares of stock are now possibly the most widely prevalent form of title to joint interest in property, and their certificates are to the possessor the evidence of his right. As is commonly known, millions of shares are transferred daily from one owner to another, and in the stock exchanges of the country comprise perhaps the major part of their transactions. On small pieces of paper are written the evidence of fortunes. It is therefore of great importance that these titles should rest on a sure foundation. It was to safeguard these that the act was passed."

In considering the intention of our Legislature in the passage of Section 13 of this Act, it is well to have in mind the Uniform Warehouse Receipt Act and the Uniform Sales Act:

Section 8481, General Code: "If goods are delivered to

a warehouseman by the owner   *   *   *   and a negotiable receipt is issued for them, they cannot thereafter, while in the possession of the warehouseman, be attached by garnishment or otherwise, or be levied upon under an execution, unless the receipt be first surrendered to the warehouseman, or its negotiation enjoined."

Section 8419, General Code: "If goods are delivered to a bailee by the owner   *   *   *   and a negotiable document of title is issued for them they cannot thereafter, while in the possession of such bailee be attached by garnishment or otherwise or be levied upon under an execution unless the document be first surrendered to the bailee or its negotiation enjoined."

Section 8673-13, General Code, like the provisions in the sections just cited, is an advance upon existing law. It is an advance which seems even more necessary in regard to certificates of stock than in the case of bills of lading or warehouse receipts. Common law does not universally protect the purchaser of a certificate of stock against attachment on the books of the company, even though the transfer of the certificate preceded the attachment. (Uniform Laws, Annotated, Vol. 6, Sec. 13.)

In the light of the sections just quoted, as well as the other sections of 8673, it seems clear that the Legislature intended to safeguard certificates and give them intrinsic value in and of themselves. In accordance with this interpretation I find myself unable to agree with the conclusion reached in *Maescher* v. *Sammann*, 22 O. L. R. 681, and believe that a Wisconsin case, *Bloch–Daneman Co.* v. *Mandelker*, 238 N. W., 831, states the true rule:

"The stock could have been impounded in one of the three ways provided in the statute;

(1)   By actual seizure;

(2)   By the surrender to the corporation of the certificate which issued, or

(3)   its transfer by the holder by enjoined. Unless it is impounded in one of these ways specified in the statute, sub-section 2 provides explicitly that the attachment shall not be valid. If the procedure followed in this case is upheld, then there is a fourth way. It is considered that so to hold would be a clear amendment of the statute by a judicial decision."

It being admitted in this case that the certificate of

stock in question is without the state, has not been surrendered nor its transfer enjoined, the court holds that the motion quashing process of garnishment as against the RKO Midwest Corporation and the service of notice by publication against the Radio-Keith-Orpheum Corporation insofar as it pertains to the said stock, should be granted.

Coming now to the note; it has been held in 109 U. S., 654 at 656, *Wyman* v. *Halstead*:

"The general rule of law is well settled that simple contract debts are assets at the domicile of the debtor. The locality of the debt is not affected by a promissory note having been given for it because the note does not alter the nature of the debt but is merely evidence of it."

This case cites approval *Owen* v. *Miller*, 10 O. S. 136. This court does not consider *Farmers* v. *Minnesota*, 280 U. S., 204, as controlling, as it deals with situs from an inheritance tax standpoint.

The Owen case is also cited in *Bragg* v. *Gaynor*, 85 Wis. 468, the second and third syllabi of that case reading:

"Debts owing by residents of this State to a non-resident, even though evidenced by notes and mortgages, have so far a situs at the domicile of the debtors that they may be subjected to the equitable jurisdiction of courts of this state for the purpose of applying them to the payment of a debt of the non-resident to a resident of this state."

"Such debts are 'property within the state' within the meaning of the statute providing for service by publication."

In addition to the authorities above cited and those in the briefs, the court has considered: *Pennington* v. *Fourth National Bank*, 243 U. S. 269; *Benner* v. *Benner*, 63 O. S. 220; *Reed* v. *Reed*, 121 O. S., 188.

As the court views the instant case, however, if the defendant has parted with "the evidence of the debt", (the note) it has likewise parted with the right to collect the debt itself and hence has no property within the state subject to attachment; but the answer of the garnishee, RKO Midwest Corporation does not set forth sufficient facts to enable the court to determine whether the

Bank is a holder in due course within the requirements of the Negotiable Instrument Act.

This motion will accordingly be set down for hearing at a time convenient to counsel and the court will hear evidence on this question.