SNYDER MOTOR CO. v. UNIVERSAL CREDIT CO.

No. 14807.

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 24, 1947.

Rehearing Denied Feb. 28, 1947.

Lem Billingsley, of Fort Worth, for appellant.

H. C. Ray, of Fort Worth, for appellee.

HALL, Justice.

██ This is a garnishment suit. The appellant in his motion for rehearing presents in his written argument and connects the same to his Points of Error Nos. 1, 2 and 4 the question that the passage of Art. 1358—1 et seq., Vernon's Ann.Civ.St. Art. 1358—1 et seq., the same being the Uniform Stock Transfer Act, has in effect repealed Rule 671, Texas Rules Civil Procedure and all other statutes pertaining to garnishment, attachment and/or levy upon shares of stock in domestic corporations. The appellee contends that this court is without authority to consider said Statute because the appellant did not raise same in his Points of Error or in his motion for new trial. We find under Rule 418 and under the case of Fambrough v. Wagley by the Supreme Court, 140 Tex. 577, 169 S.W.2d 478, we do have authority **to con**sider the question and substitute this **opinion** in the place of the one heretofore written.

The appellee Universal Credit Company alleged it was the owner of an unsatisfied judgment against one D. H. Snyder, Jr. in the sum of $1,597. It garnisheed the Snyder Motor Company, a domestic corporation, requiring same to answer by reciting the number of shares of stock, if any, the judgment debtor Snyder, Jr. owned in said garnishee corporation. The garnishee corporation answered under oath in substance that said D. H. Snyder, Jr. was not the owner of any stock or shares in said corporation when the writ was served. The evidence showed that the stock which the judgment debtor owned in said corporation was transferred by said owner to his father, D. H. Snyder, Sr. to secure purchase price money advanced him. This hypothecation and transfer of the stock upon the books and to the pledgee occurred before the writ was served upon said garnishee corporation. Neither Snyder, Sr., the pledgee, nor Snyder, Jr., the owner, were made parties to the suit.

The case was tried before the 67th District Court of Tarrant County upon its

merits; judgment was rendered in favor of appellee, wherein the court found that the defendant D. H. Snyder, Jr. was the owner of an interest in 83 shares of the capital stock in said Snyder Motor Company. That he was indebted to the appellee in the sum of $1,597. The judgment further ordered the sale, as under execution, in favor of the appellee, of the interest in and to such shares of stock and interest owned by said Snyder, Jr. in the said Snyder Motor Company; that the officer making such sale shall execute a transfer of such shares and interest to the purchaser as required by law, and that such sale shall pass to the purchaser all right, title or interest owned by the said D. H. Snyder, Jr. in such shares of stock; that such sale be subject to any valid, outstanding unpaid lien indebtedness against said stock, and that the proper officer of such corporation shall enter such sale and transfer on the books of said corporation in the same manner as if the sale had been made by defendant himself. Said judgment further denied appellant attorney's fees, but did allow the sum of $25 each to the garnishees, the City National Bank of Denison, Texas and the State National Bank of Denison, Texas.

Such a situation under said Act presents a new legal question in our State, towit, under said Act, did the judgment of the trial court have the authority to order the stock sold, as under execution, and order the garnishee Motor Company to transfer said stock to the purchaser, as though the owner had ordered it done himself.

Being unable to find any expression from our State courts upon the Act, we have confined our study of the decisions rendered by courts of our sister states to those that have adopted the Uniform Stock Transfer Act. We find the courts in all the states, where the Act is adopted, holding, in effect, that a levy of an execution or the service of a writ of garnishment upon the company issuing the stock is insufficient to pass title or to impound the stock under a writ of garnishment, unless the stock is actually seized by the officer serving the writ. We find under said Act that even though the garnishee company had answered, in the affirmative, that the judg-ment debtor had stock in said company, yet the garnishment proceedings would have been of no force or effect without the seizure of the stock itself.

Most of the cases hereinafter cited grew out of attachments and/or levy suits, but we find that garnishment is a form of attachment, designed to reach debts due by the defendant, Fletcher Cyc. on Corporations, Vol. 10, p. 19, Sect. 4732, and under the Act and the authorities we find the trial court committed error in ordering the sale, as under execution, of the stock which he found the judgment debtor owned, as well as of error by the court in ordering in his judgment that the proper officer of the corporation shall enter such sale and transfer of the stock on the books of said corporation in the same manner as if the sale had been made by the defendant.

Sect. 13 of the Uniform Stock Transfer Act, Vernon's Ann.Civ.St. Art. 1358—13, provides, in effect, that no attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate is actually seized by the officer making the attachment or levy; or is surrendered to the corporation which issued it; or its transfer by the holder is enjoined.

Snyder Motor Company is a domestic corporation having been organized since the Uniform Stock Transfer Act was adopted in this State. The officer serving the writ of garnishment did not seize the stock certificates which were in the hands of Snyder, Sr. Said stock was not surrendered to the corporation. Under the laws of our State, prior to the enactment of said Act, a valid levy upon corporate stock could only be made at the office of the corporation, irrespective of the location of the stock certificate. Rule 671, Texas Rules Civil Procedure. A levy upon the certificate would not have been a levy upon the interest in the corporation. Presnall et al. v. Stockyards National Bank, Tex.Civ.App., 151 S.W. 873, writ dismissed. The passage of the Act by our Legislature completely reversed the situs of shares of stock in domestic corporations. Under such Act a valid attachment, levy and/or garnishment upon such shares could be made only by

actual seizure of the stock certificate by the officer, unless the certificate be surrendered to the corporation which issued it; or its transfer by the holder be enjoined, and it has been held that said injunction must be against the owner of the stock. Amm v. Amm, 117 N.J.Eq. 185, 175 A. 186. The Act further provides that such corporation shall not be compelled to issue a new certificate for the stock until the old certificate is surrendered to it, except wherein one is lost or destroyed.

We find the purpose of the Act correctly expressed in the case of Wallach v. Stein, 102 N.J.L. 517, 133 A. 81, by the Supreme Court of New Jersey, affirmed by their Court of Errors and Appeals in 103 N.J.L. 470, 136 A. 209. The constitutionality of the Act was also upheld in the Court of Errors opinion. We further find the case to be directly in point with the instant case at bar. It was a replevy case and the Supreme Court decision outlines the facts, and after applying the Act to the facts came to the following decision:

"The plaintiff appellant was the purchaser at execution sale. The levy was made by the sheriff at the office of the corporation and without seizure of the certificates—i. e., in the manner customary before the act of 1916 [N.J.S.A. 14:8–23 et seq.] * * *.

"It seems, plainly enough, to require actual seizure of the certificate as a condition precedent to a valid levy, and in fact we so held in the Mulock case [Mulock v. Ulizio, 102 N.J.L. 251, 131 A. 622], going so far as to say that a mere momentary seizure followed by a surrender of possession by the officer is not enough. Indeed, the principal argument now made is that the act of 1916 was intended only for the benefit of the corporation and not to apply as between rival claimants; but it should be quite obvious that any such idea is not only logically faulty, but would, if applied, lead to endless confusion in practice; for, after all, what should pass under a levy and sale is the right to be recognized as a stockholder on the books of the corporation.

"Dealing with the statute, therefore, as an act in force and unimpugned, the levy and sale passed no title to the stock. There is no claim that the certificates were surrendered to the corporation, or that there was any injunction as contemplated by the last clause of the section under consideration."

The purpose of the Act as set out in the above case by the Court of Errors and Appeals is as follows: "The act is one of a number recommended by the American Bar Association to the various state Legislatures, and upon such sponsor it was adopted by our own Legislature. As its title indicates, its purpose is 'to make uniform the law of transfer of shares of stock in corporations,' and, as we think, to cover the range of titles whereby this result could be effected. Shares of stock are now possibly the most widely prevalent form of title to joint interest in property, and their certificates are to the possessor the evidence of his right. As is commonly known, millions of shares are transferred daily from one owner to another, and in the stock exchanges of the country comprise perhaps the major part of their transactions. On small pieces of paper are written the evidence of fortunes. It is therefore of great importance that these titles should rest upon a sure foundation. It is to safeguard these that the act was passed, and, as declared in section 19 [N.J. S.A. 14:8–26], to make uniform the law of transfer with that of other states enacting it."

The Court of Chancery of that State followed the above case in their opinion in the case of Luks v. Luks, 106 N.J.Eq. 160, 150 A. 346, 347, wherein said Court of Chancery held:

"An application was made on March 25, 1930, 'for an order to make absolute the order to show cause made in this cause on January 3, 1929, returnable January 15, 1929, to direct the Sheriff of Essex County, the sequestrator appointed in this cause to proceed to sell * * * and the fifty (50) shares of stock of his in the Jefferson Fire Insurance Company heretofore sequestered under the writ of sequestration issued out of this court on January 1929; to direct the defendant to surrender to said sequestrator his certificates to said stock for this

purpose; and to direct said companies, or their successors, to issue new and duplicate certificates therefor for said purpose.' * * *.

"I have come to the conclusion, therefore, that these companies can be enjoined only to the extent of forbidding them from transferring on their books the stock in question at the instance of the defendant."

■ We further find the Act has made certificates of stock fully negotiable. Harbridge v. American National Bank of Racine, 177 Wis. 206, 187 N.W. 853.

■ The certificate of stock constitutes the res for the purpose of attachment and levy. Johnson v. Wood, 189 A. 613, 15 N.J. Misc. 150; Mulock v. Ulizio, 102 N.J.L. 251, 131 A. 622.

The Federal Government has designated the situs of corporate stock for purposes of taxation to be at the domicile of the owner of the stock and not at the domicile of the corporation issuing it. First National Bank v. Maine, 284 U.S. 312, 52 S.Ct. 174, 76 L.Ed. 313, 77 A.L.R. 1401.

In the case at bar it has been noted that the stock certificates were not seized by the officer or surrendered to the corporation which issued it, but all that was done was the serving of the writ of garnishment upon the corporation that issued the stock. Under Section 13 of the Act it is the transfer of the holder which must be enjoined. Klein v. Wilson & Co., D.C., 7 F.2d 769, affirmed, 3 Cir., 7 F.2d 777.

The Act has made the situs of corporation stock for the purpose of attachment and levy follow the certificate, and not the issuing corporation. Amm v. Amm, 117 N.J.Eq. 185, 175 A. 186; Klein v. Wilson, supra; Mulock v. Ulizio, supra.

■ The main purpose of the Uniform Act is to make certificates of stock the sole representative of the shares which they represent. United States Gypsum Co. v. Houston, 239 Mich. 249, 214 N.W. 197. This case holds that Section 15 of the Act will defeat a lien which the issuing corporation has against said stock for purchase price as against an innocent pledgee, unless the lien is recited in the certificate.

See also Mills v. Jacobs, by the Supreme Court of Pennsylvania, 333 Pa. 231, 4 A. 2d 152, 122 A.L.R. 333.

The Oregon Supreme Court in the case of Hodes v. Hodes, 176 Or. 102, 155 P.2d 564 went so far as to hold that the Uniform Act provided that the "holder" of a certificate of shares of stock is one who has actual or constructive possession of it and who is entitled to the rights and benefits derived therefrom. A transfer of stock certificate is made to operate as a transfer of the shares represented thereby without regard to transfer on the books of the company. Bloch-Daneman Co. v. J. Mandelker & Son, Inc., 205 Wis. 641, 238 N.W. 831; Mills v. Jacobs, supra.

The garnishor in the instant case did not follow any one of the three methods set out in Section 13 of the Act to attach or levy on the shares of stock. The writ did not purport to operate against either the owner or the holder of the stock, but was addressed only to the corporation issuing the stock; if a transfer on the books of the corporation were a prerequisite to the transfer of the stock as under the old law, then the garnishment proceedings would be effective. Under Section 1 of the Uniform Stock Transfer Act title to a certificate and to shares of stock can be transferred only as follows:

"(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby; or

"(b) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person.

"The provisions of this section shall be applicable, although the charter or articles of incorporation or code of regulations or by-laws of the corporation issuing the certificate and the certificate itself provide that the shares represented thereby shall

be transferable only on the book of the corporation or shall be registered by a registrar or transferred by a transfer agent." Vernon's Ann.Civ.St. Art 1358—1.

■ The above section negatives the necessity of a transfer on the books of the company. Such transfer under the Act becomes no more than the recording of a deed to land. Thus, the garnishment writ caught nothing. It is as stated in the Amm case, supra, a "mis-use of power".

The case of Harbridge v. American National Bank of Racine, by the Supreme Court of Wis., supra, is similar to the one at bar, except the pledgee in the instant case was not made a party:

"One Thornburgh owned some stock in the American National Bank of Racine for which on June 19, 1917, certificates were issued to and since have been held by him. A judgment was obtained against him, and an attachment in aid of an execution was levied upon the stock without any manual seizure thereof by the sheriff, who afterwards sold the stock to the petitioner herein. Willhite, as trustee of the Mt. Carmel Trust & Savings Bank, claims title by virtue of a loan equal to the value of the stock made by the bank to Thornburgh some time after the attachment. At the time of the loan Thornburgh delivered to the bank the certificates of stock. Thornburgh had notice of the attachment, but the bank did not. The trial court held that the petitioner's rights acquired under the attachment were superior to the rights of the pledgee bank, and ordered the stock to be turned over to him. From such order the trustee appealed. * * *

"Construing the proviso as relating to the whole subject-matter of the section, we preserve the meaning it had in the Uniform Stock Transfer Act from which it was taken, and preserve a uniform scheme of making valid levies upon stock. The object of the Uniform Stock Transfer Act already adopted by a majority of our leading states was to simplify and unify the transfer of stock, and make it, as far as consistent with the rights of all parties, negotiable paper.

"It is urged by respondent that there is no efficiency in an injunction restraining the transfer of stock when not actually seized. To this it may be said that that is a matter for the Legislature to determine; and it evidently thought a restraining order had some deterring effect. It is not for courts to question such a conclusion. On the contrary, it is generally conceded from long judicial experience that an injunction is an efficient remedy in aid of justice. * * *

"It follows from what has been said that the trial court erred in holding that the petitioner was the owner of the stock. He acquired no title because the provisions of section 2989 were not complied with."

A more direct case in point by the Supreme Court of Wisconsin is the Bloch-Daneman Co. v. J. Mandelker & Son, supra.

Some of the cases cited herein from our sister states involve questions which are not pertinent to this case, but all of them do reflect the fact and are in point upon the question raised in this case to the effect that no attachment or levy of stock is valid unless the stock itself is seized by the officer serving the writ. They all further reflect the fact that prior to the passage of the Act in their state, their law was similar to ours.

■ We therefore find that by the passage of the Uniform Stock Transfer Act it portrays the commercial view that the shares of stock are identified with the certificate which we regard as the stock itself. We further construe the first part of Sect. 13 of said Act to mean that before the levy or attachment of shares of stock in domestic corporations is valid the same must first be seized by the officer serving such writ.

The former judgment of this court is set aside, and we affirm that part of the judgment of the trial court wherein it granted attorney's fees to two of the said garnishee companies, to wit, The City National Bank of Denison, Denison, Texas, and the State National Bank of Denison, Texas, in the sum of $25 each, and wherein it denied the appellant attorney's fees;

in all other respects the judgment of the trial court is reversed and judgment is here rendered denying the plaintiff in garnishment any relief against the garnishee Snyder Motor Company.