Mills *v.* Jacobs, Appellant, et al.

Argued December 2, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

232

*Roy B. Pope,* with him *E. F. McGovern,* for appellant.

*A. L. Turner,* of *Jenkins, Turner & Jenkins,* with him *Donald S. Mills,* for appellee.

OPINION BY MR. JUSTICE DREW, January 26, 1939:

Upon a judgment against defendant, plaintiff issued an attachment execution wherein the Citizens Bank of Parsons, a Pennsylvania corporation, was summoned as garnishee. In answer to interrogatories, the garnishee stated that it had in its possession four certificates of stock of foreign corporations, one certificate of a Virginia corporation and three certificates of Delaware corporations, and that all these certificates, issued since 1929, were duly assigned in blank by defendant and delivered to the garnishee as collateral security for his demand note. The court entered judgment for plaintiff for the certificates and assignments thereof, subject to the payment to the garnishee of the amount for which they were pledged, and ordered that a writ of fieri facias be awarded to sell all the right, title and interest of defendant in the stock and the certificates. The writ issued and the sheriff levied upon the certificates and took them into possession. The garnishee surrendered them without contest and has raised no objection to these proceedings. Thereafter, upon petition of defendant pledgor, a rule was granted upon plaintiff and the garnishee to show cause why the proceedings should not be vacated and the sheriff directed to return the certificates to the garnishee, and that it be adjudged that the

garnishee has in its possession no property of defendant subject to the attachment. After argument, the rule was made absolute, and the court en banc, upon reargument, affirmed that order. Thereupon, the plaintiff appealed to the Superior Court, which reversed the court below and reinstated the writ of fieri facias (131 Pa. Superior Ct. 469). The appeal by defendant to this court followed.

The sole question for our determination is whether defendant's interest in shares of Virginia and Delaware corporations, assigned and delivered by him to the garnishee bank as collateral security for a note still unpaid, can be the subject of attachment execution in this state.

The fundamental problem is the existence or nonexistence within the jurisdiction of the thing attached. At common law shares of stock of a corporation, whether foreign or domestic, were not subject to attachment: 6 C. J. 212 and cases there cited. In an attempt to enable creditors to reach this type of property, the Pennsylvania legislature passed statutes making stock subject to attachment: Act of March 29, 1819, P. L. 226; Act of June 16, 1836, P. L. 755. But these acts were held not to cover stock of a foreign corporation: *Christmas v. Biddle,* 13 Pa. 222; *Moys v. Union Trust Co.,* 276 Pa. 58. The reason for holding that these statutes, in spite of their broad language, did not apply to foreign stock was that the situs of stock was regarded as being at the domicile of the corporation. The presence of the certificate, being regarded as only evidence of the ownership of the stock, was not considered sufficient to bring the property into the state where the certificate was held.

If there were no other statutory authority in this State for subjecting to attachment shares of stock, we would stop here, for then shares of a foreign corporation in Pennsylvania would be in the position all shares were in at common law. But it is clear that foreign shares can be made subject to attachment, if the situs of the

stock is within the jurisdiction of the state where the attachment issues. The certificate itself is, of course, within the jurisdiction of the state where it is held. But this does not give that state jurisdiction over the share unless the certificate embodies the share. And since the state of incorporation has jurisdiction over the share, it alone can determine whether the certificate shall represent the share to the extent of making the situs of the share the jurisdiction where the certificate is found. Section 53 of the Restatement of Conflict of Laws provides: "(1) Shares in a corporation are subject to the jurisdiction of the state in which the corporation was incorporated. (2) The share certificate is subject to the jurisdiction of the state within whose territory it is. (3) To the extent to which the law of the state in which the corporation was incorporated embodies the share in the certificate, the share is subject to the jurisdiction of the state which has jurisdiction over the certificate."

This view is supported by two recent cases in the Federal courts. In *Disconto-Gesellschaft v. U. S. Steel Co.*, 267 U. S. 22, it was held that a seizure in England of certificates of a New Jersey corporation passed title to the stock since New Jersey had made the certificates representative of the shares. In that case Mr. Justice HOLMES said (p. 28): "New Jersey having authorized this corporation like others to issue certificates that so far represent the stock that ordinarily at least no one can get the benefits of ownership except through and by means of the paper, it recognizes as owner anyone to whom the person declared by the paper to be owner has transferred it by the indorsement provided for, wherever it takes place." In *United Cigarette Mach. Co., Inc., v. Canadian Pac. Ry. Co.*, 12 Fed. (2d) 634, however, it was held that the alien property custodian, by a seizure in Canada of stock of a Canadian corporation, acquired title to the stock as against a Virginia corporation which had purchased the certificates in Germany. The *Disconto-Gesellschaft* case was distinguished on the ground

that in the instant case the state of incorporation, having complete power over the ownership of the shares, had not consented that the certificates represent the shares. In this way it is possible for stock to have a situs in a state other than that of incorporation and the reason for not allowing an attachment of foreign shares in that jurisdiction ceases to exist.

By the adoption of the Uniform Stock Transfer Act of May 5, 1911, P. L. 126, Pennsylvania made this method applicable in this state, and has permitted the attachment of shares of foreign corporations where the state of incorporation has by consistent laws consented to such change. The main purpose of the Uniform Act is to make certificates of stock as far as possible the sole representative of the shares which they represent: *U. S. Gypsum Co. v. Houston,* 239 Mich. 249. By Section 1 a transfer of the certificate is made to operate as a transfer of the shares. For the purposes of transfer of the stock the effect of this provision is thus to make the situs of the stock the place where the certificates are held: *Klein v. Wilson & Co.,* 7 Fed. (2d) 769. Section 13 of this act provides: "No attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy. . . ." Section 14 provides: "A creditor whose debtor is the owner of a certificate shall be entitled to such aid from courts . . . in attaching such certificate or in satisfying the claim by means thereof as is allowed at law or in equity . . ." Since section 22 defines "certificates" and "shares" referred to in the body of the act as those of a corporation "organized under the laws of this state or of another state whose laws are consistent with this act," it is apparent that sections 13 and 14 are to be applied to certain foreign shares, and, to the extent indicated by the act, are intended to permit the attachment of such shares. It is therefore clear, as pointed out by Judge FINLETTER in the case of *Cherkasky v. Pride,* 10

D. & C. 133, that "so far as it relates to shares of a foreign corporation, the statute is quite opposed to the previously existing rule," since it permits the attachment of foreign shares whose situs can be regarded as being in this state by virtue of the presence of the certificate which represents the shares.

This conclusion finds support in the recent case of *Elgart v. Mintz*, 123 N. J. Eq. 404, where a creditor attempted to attach stock of a New Jersey corporation in New Jersey when the certificates were in New York. Both states had adopted the Uniform Stock Transfer Act. In holding that attachment could be made only by actual seizure of the certificate, the court said (p. 407): "Prior to that act our courts held that the situs of the stock of a New Jersey corporation was at the domicile of the corporation irrespective of the location of the stock certificate. . . . But since the adoption of the Uniform Stock Transfer Act by our Legislature the situs of corporate stock, for the purpose of attachment and levy, has followed the certificate and is now where the certificate is found."

In New York it has been held that stock of a foreign corporation is subject to garnishment proceedings regardless of what the state of incorporation considers to be the situs. This doctrine was applied in *Simpson v. Jersey City Contracting Co.*, 165 N. Y. 193, on the theory that the court would presume that "if the stock of the defendant was sold at a judicial sale to another, the right of the purchaser to a transfer would be recognized, and his ownership of the stock be given effect upon the books of the corporation." The difficulties arising from adopting this view appear in litigation involving the attempt by creditors to reach the stock of Francois Coty in Coty, Inc., a Delaware corporation. One creditor issued an attachment in New York to reach the certificates of stock held in that state. The New York Court of Appeals allowed the attachment to issue against the certificates: *Cotnareanu v. Chase National Bank*, 271 N. Y,

294. Subsequently another creditor issued an attachment in Delaware against the same shares of stock, and the Delaware court held the attachment complete when the prescribed process was served on the proper officer or agent of the corporation: *Woods v. Spoturno,* 183 A. 319 (Del. Super.). The conflict between the attachments must obviously be resolved in favor of the one in Delaware, since Delaware has not embodied the shares in the certificate for attachment purposes (Rev. Code, 1935, ch. 65, sec. 73), and hence the court there has jurisdiction over the shares themselves. Furthermore, by the Uniform Stock Transfer Act the attachment of foreign shares is expressly limited to shares of states whose laws recognize the transfer of the certificate as a transfer of the share, and hence the applicability of the act depends on whether a similar law is in force at the domicile of the corporation: Christy, The Transfer of Stock, sec. 66.

In Delaware, which has not adopted the Uniform Stock Transfer Act, it is expressly provided by statute as follows: "For all purposes of title, . . . attachment, garnishment . . . but not for the purpose of taxation, the situs of the ownership of the capital stock of all corporations existing under the laws of this State . . . shall be regarded as in this State." (Revised Code, 1935, ch. 65, sec. 73.) However, Virginia, by its adoption of the Uniform Stock Transfer Act [Code of 1936, Title 34, sec. 3848(2)—3848(26) ], has made the certificate representative of the share. Hence, in this case, the certificates of stock in the Delaware corporations are not subject to levy, and therefore the pledgor's equity of redemption in such shares cannot be reached: *Seip v. Laubach,* 333 Pa. 225. The certificate in the Virginia corporation is liable to attachment, the requirement of seizure having been met, and hence it can be sold subject to the rights and interests of the pledgee.

It is clear that for purposes of inheritance taxes, the situs of all foreign shares is at the domicile of the owner: *First National Bank v. Maine,* 284 U. S. 312. But this doctrine is not applicable here, for it is evident that the situs for purposes of taxation and the situs for purposes of attachment may differ: *Guaranty Trust Co. of New York v. Fentress,* 61 Fed. (2d) 329, 334. This is conclusively shown by the fact that even prior to 1911, when no foreign shares were subject to attachment in Pennsylvania since the situs for that purpose was regarded as being at the domicile of the corporation, nevertheless such shares were taxable in this state on the theory that the situs for tax purposes was at the domicile of the owner: *McKeen v. The County of Northampton,* 49 Pa. 519; *In re Short's Estate,* 16 Pa. 63.

We affirm the judgment of the Superior Court in reinstating the writ of fieri facias as to the stock of the Virginia corporation, and vacate its order as to the stock of the Delaware corporations, which is to be returned by the sheriff to the garnishee bank.

Judgment of the Superior Court, as modified, is affirmed.