Argued January 3; affirmed January 23; rehearing denied
February 20, 1945

# HODES *v.* HODES

(155 P. (2d) 564)

Before BELT, Chief Justice, and KELLY, BAILEY, BRAND and HAY, Associate Justices.

*Leland F. Hess,* of Portland, for appellant.

*Barnett H. Goldstein,* of Portland, for respondent.

BAILEY, J.   The circuit court for Multnomah county on November 5, 1941, granted to the defendant

a decree of permanent separate support and maintenance from the plaintiff, on her cross-complaint in a suit for divorce instituted by the plaintiff. The decree further provided for the payment of $150 per month by the plaintiff to the defendant for her separate support and maintenance and for the support of the minor child of the parties.

The plaintiff failed to make the monthly payments, and after several unsuccessful attempts to enforce the decree of the court by contempt proceedings, the defendant caused execution to be issued to collect the delinquent monthly installments. Before the return of the writ of execution by the sheriff, the defendant filed an affidavit in which she stated that there was due and owing to her from the plaintiff, on the decree for separate maintenance, the sum of $575; that execution had been issued thereon against the property of the plaintiff; and that the defendant believed that the plaintiff had property liable to execution which he refused to apply to the satisfaction of the decree. She asked that the plaintiff be required to appear before the court and "be examined under oath touching his property", and that, pending such hearing, the plaintiff be restrained from "transferring, disposing of, encumbering or interfering with any of his said property not exempt by law from seizure or sale upon execution". In accordance with that request, an order of the court was entered on January 6, 1944, requiring the plaintiff to appear before it on January 21 of that year and enjoining him, "pending this proceeding, from selling, transferring, encumbering or in any manner disposing of any of his property liable to execution."

After a hearing the court found that the plaintiff was the owner of seventy-one shares of the capital stock

of States Lumber Company and four hundred shares of capital stock of the O. W. Trading Company, Inc., both Oregon corporations; that at the time of the hearing before the court the certificates of such stock were "held by judgment debtor in a safety deposit box in Vancouver, Washington"; and that such certificates were in his possession and under his control. Based upon those findings, the court on February 14, 1944, ordered the plaintiff to deliver the certificates of stock to the sheriff of Multnomah county, Oregon, within five days from the date of the order, to be levied upon and sold and the proceeds thereof applied in satisfaction of the judgment in favor of the defendant. From this order the plaintiff has appealed.

One of the principal contentions advanced by the plaintiff is that the shares of stock owned by him in the two Oregon corporations above mentioned are not property in Multnomah county "liable to execution", inasmuch as the certificates of the shares of stock are not in Oregon but in the state of Washington. He asserts that under the uniform stock transfer act, adopted in Oregon in 1935 (Oregon Laws 1935, chapter 239) and now codified as § 78-101 to and including § 78-124, O. C. L. A., stock certificates are personal property and no longer merely evidences of ownership of shares of stock.

■ At common law, shares of stock of a corporation were not subject to levy or attachment: 6 C. J., Attachment, § 395, page 212; *Mills v. Jacobs,* 333 Pa. 231, 4 A. (2d) 152, 122 A. L. R. 333; *Elgart v. Mintz,* 123 N. J. Eq. 404, 197 A. 747. Legislation to enable creditors to reach this type of property has been enacted in most jurisdictions, by virtue of which shares of stock in incorporated companies may be attached: 7 C. J. S., Attachment, § 79, page 253. In Oregon since the en-

actment of the code of civil procedure in 1862 provisions have been in effect for the attachment of corporate stock and sale thereof on execution. One such provision is the following:

> "The rights or shares which such defendant may have in the stock of any association or corporation, together with the interest and profits thereon, and all other property in this state of such defendant, not exempt from execution, shall be liable to be attached. The sheriff shall note upon the writ the date of its delivery to him, and shall make a full inventory of the property attached, and return the same with the writ": § 7-205, O. C. L. A.

Section 7-206, O. C. L. A., specifies that rights or shares in the stock of a corporation shall be attached by the sheriff by leaving a certified copy of the writ of attachment "with such person or officer of such . . . corporation as this code authorizes a summons to be served upon".

By subdivision 4 of § 6-1501, O. C. L. A., it is provided that under a writ of execution the property of a judgment debtor "shall be levied on in like manner and with like effect as similar property is attached."

Prior to the adoption of the uniform stock transfer act in 1935, shares of stock in Oregon corporations were liable to execution. The plaintiff does not claim otherwise, but asserts that since the adoption of the uniform law the situs of the stock is that of the certificate representing it, and that inasmuch as the certificates here in question are not in Oregon, the stock is not in this state and therefore is not liable to execution.

■ The essential features of the uniform stock transfer act have been adopted in thirty-six states and the territory of Alaska: 6 U. L. A. 1943, page 6. The main purpose of that act is to make certificates of stock

"as far as possible the sole representative of the shares which they represent": *Mills v. Jacobs,* supra; 6 U. L. A. 2, commissioners' note. By § 1 of the uniform stock transfer act (§ 78-101, O. C. L. A.), a transfer of a stock certificate is made to operate as a transfer of the shares represented thereby, without regard to transfer on the books of the company: *Bloch-Daneman Co. v. J. Mandelker & Son, Inc.,* 205 Wis. 641, 238 N. W. 831; *Mills v. Jacobs,* supra; *Elgart v. Mintz,* supra.

■ Whether or not the plaintiff's shares of stock are subject to attachment and sale on execution is governed by § 78-113, O. C. L. A. (§ 13 of the uniform stock transfer act), reading as follows:

> "No attachment or levy upon shares of stock for which a certificate is outstanding shall be value [valid] until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder be enjoined. Except where a certificate is lost or destroyed, such corporation shall not be compelled to issue a new certificate for the stock until the old certificate is surrendered to it."

Three alternative means are specified in the section last quoted for making effective an attachment or levy on stock, to wit: (1) by actual seizure of the certificate; (2) by surrender of the certificate to the corporation which issued it; and (3) by enjoining the holder from transferring it: *Bloch-Daneman Co. v. J. Mandelker & Sons, Inc.,* supra; *Johnson v. Wood,* 15 N. J. Misc. 150, 189 A. 613; *Elgart v. Mintz,* supra; *Harbridge v. American Nat. Bank,* 177 Wis. 206, 187 N. W. 853. In the instant case the certificates were not seized by the execution officer or surrendered to the respective corporations. The owner of the certificates, however, is

a resident of Oregon, and within the jurisdiction of the court.

■■ The word "holder" is not defined by the uniform act. It is often used in reference to negotiable instruments, and when so employed it means "anyone in actual or constructive possession of the note, and entitled at law to recover or receive its contents from the parties to it." *Bower v. Casanave,* 44 F. Supp. 501; *National Exchange Bank v. Wiley,* 195 U. S. 257, 49 L. Ed. 184, 25 S. Ct. 70. Elements of negotiability of certificates of corporate stock have been supplied by the uniform act. *Turnbull v. Longacre Bank,* 249 N. Y. 159, 163 N. E. 135; *Bank of United States v. Cooper-Bessemer Corp.,* 146 Misc. 20, 261 N. Y. S. 687; *Mason v. Public Nat. Bank and Trust Co. of New York,* 262 App. Div. 249, 28 N. Y. S. (2d) 416; *Harbridge v. American Nat. Bank,* supra; *Untermyer v. State Tax Commission,* 102 Utah 214, 129 P. (2d) 881; § 78-101, O. C. L. A.

■ We think that it was the intention of the National Conference of Commissioners on uniform state laws, in drafting the uniform stock transfer act, and the legislature in enacting it, to give to the word "holder" as therein used substantially the same meaning that it has when applied to negotiable instruments. As thus defined, the holder of a certificate of shares of stock is the one who has actual or constructive possession of it and is entitled to the rights and benefits inherent in the ownership of the shares of stock represented by such certificate.

■ Under this construction the plaintiff is the holder of the certificates of the stock owned by him in the two Oregon corporations hereinbefore mentioned, although such certificates are now in a safety deposit

box in Vancouver, Washington. He at least has the constructive, if not the actual, possession of the certificates and is entitled to all the benefits of ownership. No one else has the actual possession of the certificates, or any interest in them.

In the case before us, the holder of the certificates is the judgment debtor. He is a resident of Oregon, where the judgment against him was obtained and where the corporations issuing such certificates are domiciled. A factual situation is thus presented whereby the shares of stock owned by the judgment debtor may be attached or levied on by the sheriff leaving a certified copy of the writ of attachment, or execution, as the case may be, with the proper officer of the respective corporations (§ § 6-1501 and 7-206, O. C. L. A.) and by an order of court enjoining the holder of the certificates from transferring them. § 78-113, O. C. L. A.; *Progressive Building & Loan Ass'n. v. Rudolph,* 113 N. J. L. 204, 172 A. 884; *Trade Bond & Mortgage Co. v. Schwartz,* 303 Ill. App. 165, 24 N. E. (2d) 892; *Harbridge v. American Nat. Bank,* supra.

We are here dealing with certificates of corporate stock issued after the taking effect of the uniform stock transfer act. Had such certificates been issued prior thereto, the provisions of the act would have no application. § 78-123, O. C. L. A.

The last sentence of § 78-113 (§ 13 of the uniform act) reads as follows:

" * * * Except where a certificate is lost or destroyed, such corporation shall not be compelled to issue a new certificate for the stock until the old certificate is surrendered to it."

The following section, 78-114, O. C. L. A. (§ 14, uniform act) provides as follows:

> "A creditor whose debtor is the owner of a certificate shall be entitled to such aid from courts of appropriate jurisdiction, by injunction and otherwise, in attaching such certificate or in satisfying the claim by means thereof as is allowed at law or in equity, in regard to property which can not readily be attached or levied upon by ordinary legal process."

Unless some means were provided whereby the holder of a certificate might be required to surrender it, the purchaser thereof on execution would, in many instances, have no way of procuring from the corporation a new certificate. It was with this thought in mind that the last mentioned section was included in the act.

■ The question arises whether the remedy provided by § 78-114 is available to a creditor in the court in which judgment was rendered, regardless of whether such judgment was procured in an action at law or suit in equity. We think it is.

In *Phelps v. Mutual Reserve Fund Life Ass'n,* 112 F. 453, 61 L. R. A. 717 (Affirmed 190 U. S. 147, 47 L. Ed. 987, 23 S. Ct. 707), Judge Lurton describes the jurisdiction of a court of record in the following language:

> "We are unable to agree with the opinion of the court below that the jurisdiction of the state circuit court was exhausted by the rendition of its judgment. The power to render that judgment included the power to issue all proper process to enforce its payment. The jurisdiction of the court over the controversy and over the parties, acquired in the primary case by service of process, continued until its judgment should be satisfied. This is a well-

settled rule in respect to the jurisdiction of courts of record.''

It was held in that case that a state court had jurisdiction ''to impound and sequester'' choses in action owned by the judgment debtor through means of a receiver in aid of the satisfaction of its judgment and that the proceeding for the appointment of a receiver ''was not in any sense a new suit or a separate action'' but merely auxiliary to the primary action.

As to the jurisdiction of a court of record in the enforcement of its judgments, see also 15 C. J., Courts, § 108, p. 810; 14 Am. Jur., Courts, § 174, p. 373.

The sole question involved in *Trade Bond & Mortgage Co. v. Schwartz,* supra, was whether the municipal court of Chicago, ''in a case where judgment and execution has been issued from that court, has power and jurisdiction to give aid by injunction as provided in sections 13 and 14 [uniform act].'' In its opinion, the court, after stating that the municipal court did not have general chancery powers, gave four reasons why the municipal court had jurisdiction to grant injunctive relief. The first reason given was similar to that hereinbefore quoted from *Phelps v. Mutual Reserve Fund Life Ass'n,* supra. The court then calls attention to the fact that in supplementary proceedings the judgment debtor may be enjoined from disposing of his personal property pending final settlement.

We are here more directly concerned with the fourth and final reason upon which that court bases its decision that the municipal court ''has power and jurisdiction to give aid by injunction'' in enforcing its judgments. It is thus stated:

''In the fourth place, we think that a proper construction of the language of Sections 13 and 14

of the Uniform Stock Transfer Act must be held to vest such jurisdiction in the Municipal court of Chicago. After providing in Section 13 that a levy upon shares of stock shall not be valid until the certificate is actually seized or surrendered or its transfer by the holder enjoined, the 14th Section declares that a creditor whose debtor is the owner of a certificate shall be entitled to such aid 'from courts of appropriate jurisdiction, by injunction and otherwise,' etc. In what court did the legislature intend to vest such jurisdiction? If it had been the intention to limit the jurisdiction conferred to courts of chancery, we think the act would have said so. It does not use that phrase. It uses what we must regard as the wider term of 'appropriate jurisdiction'. What other court was intended to be included? We think, manifestly, the court in which judgment was entered and which would necessarily have control of its own process."

The matter before us arose out of proceedings supplemental to execution. They were instituted pursuant to § 6-1701, to and including § 6-1706, O. C. L. A. These sections relate to law actions. They are, however, made applicable "to the enforcement of decrees, so far as the nature of the decree may require or admit of it". § 9-302, O. C. L. A.

Section 6-1701 provides that after the issuing of an execution against property and upon filing of an affidavit by the plaintiff, or someone on his behalf, "stating in general terms that the plaintiff believes that the judgment debtor has property liable to execution which he refuses to apply toward the satisfaction of the judgment," the court, in its discretion, may order the judgment debtor to appear and answer under oath concerning any property that he may have or claim. By § 6-1703, the court is granted power to enjoin "the judgment debtor from selling, transferring, or in any

manner disposing of any of his property liable to execution, pending the proceeding.'' Section 6-1702 provides that the judgment debtor may be examined on oath concerning his property and that other witnesses may be examined in his behalf, ''and if by such examination it appear that the judgment debtor has any property liable to execution, the court or judge before whom the proceeding takes place, * * * shall make an order requiring the judgment debtor to apply the same in satisfaction of the judgment, or that such property be levied on, by execution, in the manner and with the effect as provided in this title, or both, as may seem most likely to effect the object of the proceeding.''

It will be observed from the foregoing sections that the legislature has conferred upon law courts in supplementary proceedings jurisdiction to grant injunctive relief; also the power to require the judgment debtor to disclose any property he has liable to execution and to apply the same in satisfaction of the judgment.

The judgment debtor contends that supplementary proceedings are purely statutory and must be strictly construed; that such proceedings are at law and under them no equitable relief can be granted. In support of this contention he relies upon *Knowles v. Herbert,* 11 Or. 54, 240, 4 P. 126. The plaintiff in that case commenced an action against defendants T. G. Cockrill & Co. and Strum & Co. to recover a sum of money allegedly due him from the defendants ''and caused the debt due from Ward to T. G. Cockrill & Co. * * * to be attached.'' The indebtedness due from Ward was evidenced by a promissory note secured by a chattel mortgage on articles of personal property belonging

to Ward. He answered the notice of garnishment stating that he was indebted to T. G. Cockrill & Co. in the sum of $1,000, but that he had no property in his possession belonging to that company. After the attachment Ward sold and transferred the mortgaged personal property to Herbert. Execution was issued on the judgment recovered by plaintiff against the defendants and demand was made upon Ward by the sheriff for the amount admitted by Ward to be due. He, however, refused to make any payment. The sheriff thereupon served the execution on Herbert. He answered denying the possession of any property belonging to either T. G. Cockrill & Co. or Ward. Upon Herbert's examination in proceedings supplemental to execution, he was discharged with judgment for his costs. From that order the plaintiff appealed.

On appeal the plaintiff, the judgment creditor, argued that the circuit court in supplementary proceedings should have ordered the chattel mortgage foreclosed and the mortgaged property sold. In answer to this contention, the court pointed out that "proceedings supplemental to execution, under our code, is purely at law," and such proceedings could not "by any possible construction be held to embrace any equitable jurisdiction of a nature so important as that claimed by appellant's counsel." The court went on to say:

"  *  *  * If by force of the levies under the attachment and execution, the appellant acquired any right to enforce the mortgage security against Herbert and Border, as incident to the debt levied upon, he must proceed to foreclose it, as the original holders would have been compelled to do, and can not be awarded such relief in this proceeding."

We do not construe the case of *Knowles v. Herbert,* supra, as holding that a court in proceedings supplemental to execution can not restrain the judgment debtor from transferring his personal property pending such proceedings, nor that the court can not order the judgment debtor to deliver to the sheriff personal property liable to execution.

Another case relied upon by the judgment debtor as sustaining his contention is *Matlock v. Babb,* 31 Or. 516, 49 P. 873. That was a creditors' suit brought by the judgment creditor to set aside certain alleged fraudulent transfers of personal property made by the judgment debtor. The transferees were made defendants. They demurred to the complaint on the ground, among others, that plaintiff had an adequate remedy at law, and in support of the demurrer it was contended by them "that the remedy by creditors' bill in equity is superseded by the garnishee process and by the proceedings supplementary to execution." The demurrer was overruled and decree entered in favor of the plaintiff. In affirming the decree this court stated that supplementary proceedings were not intended to and did not supersede the equitable jurisdiction ordinarily asserted by means of the creditors' bill; that the latter proceeding was invoked to uncover property transferred for the purpose of defrauding creditors and for an accounting; and that provisions of the statute relating to supplementary proceedings "seem to have been intended to uncover assets or property which are within the possession or under the control of the debtor only, and in this respect the provisions therein for supplementary proceedings can in no sense take the place of a creditors' bill."

This court in *State ex rel. v. Downing,* 40 Or. 309, 58 P. 863, 66 P. 917, after discussing the New York statute relating to supplementary proceedings, said:

"* * * Our statute, it will be observed, is much broader than that of New York, and evidently framed so as to give the court or judge sufficient authority to issue a preliminary order requiring the judgment debtor to appear and answer concerning his property at a time and place specified in the order; and if, upon such examination, it satisfactorily appear that the debtor has property liable to execution, the judge is vested with plenary power to issue the final order, requiring him to apply the same in satisfaction of the judgment, or that the execution be levied on such property; * * *" See also in this connection 23 C. J., Executions, § 1008, page 864.

In 21 Am. Jur., Executions, § 695, page 329, it is stated:

"A judgment debtor who has property in a foreign state may not be compelled by proceedings supplementary to execution to go there, get the property, and apply it on the judgment. However, it is sometimes regarded as a proper practice to require the judgment debtor to make an assignment of such property to the receiver."

The order from which the appeal is taken does not require the judgment debtor to go to Vancouver, Washington, which is just across the Columbia river from Multnomah county where the judgment was secured, procure the certificates of stock and deliver them to the sheriff of Multnomah county. From all that appears in the record, the judgment debtor might be able to procure these certificates without leaving the state of Oregon.

■ In the event that the judgment debtor should refuse to obey the order of the court to produce the cer-

tificates, the court, in our opinion, would have jurisdiction, by virtue of § 78-114, *supra,* hereinbefore quoted, relating to remedies available to a judgment creditor against an owner of certificates of corporate stock, to appoint a receiver pursuant to the provisions of § 15-502, O. C. L. A., and to require the judgment debtor to transfer the certificates to such receiver, and to execute any other instruments that might be necessary to enable the receiver to procure the certificates of stock.

The order appealed from is affirmed.