## Parkhurst Estate

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

*William White, Jr.*, for petitioner.

*Arthur C. Dorrance, Jr.*, for corporate respondent.

*Joseph N. DuBarry, 4th*, for individual respondents.

LEFEVER, J., May 29, 1958.—Wilbert P. Parkhurst died on June 28, 1956, domiciled in Bayamon, Puerto Rico. Norman Parkhurst, a son of decedent, was appointed judicial administrator of his estate by decree of the Superior Court of Puerto Rico (San Juan) Section), affirmed by the Supreme Court of Puerto Rico. No ancillary letters of administration have been granted in the Commonwealth of Pennsylvania.

At the time of his death, decedent had a checking account in the amount of $14,892.36, in his sole name at the Girard Trust Corn Exchange Bank, Philadelphia. In addition, he had a "safekeeping account" with the said Girard Trust Corn Exchange Bank in which the bank held physical possession of certificates of stock in Chrysler Corporation, General Motors Corporation, United States Steel Corporation and Westinghouse Electric Company. Some of these certificates were registered in the name of decedent and another person "as joint tenants with right of survivorship and not as tenants in common." One of the joint tenants is Rae Fischer, residing at R. D. No. 1, Trout Run; a second

joint tenant is Elsie Parkhurst, residing at 133 Summit Avenue, Summit, N. J.; and the remaining joint tenants are residents of Puerto Rico.

The judicial administrator has filed a petition under section 1101 of the Fiduciaries Act of April 18, 1949, P. L. 512, to show cause why the Girard Trust Corn Exchange Bank should not be ordered by this court to deliver the balance contained in the checking account and all the stock certificates to the judicial administrator. The Girard Trust Corn Exchange Bank has filed preliminary objections, raising the question of the jurisdiction of this court to issue such a decree. This is a question of first instance.

There is no doubt that the Pennsylvania courts have general jurisdiction over the assets in question: Goodrich, Conflict of Laws (Hornbook Series, second edition), pages 480-81; Harris v. Balk, 198 U. S. 215; Louisville and Nashville Railroad Company v. Deer, 200 U. S. 176; Uniform Stock Transfer Act of May 5, 1911, P. L. 126, 15 PS §313; Uniform Commercial Code of April 6, 1953, P. L. 3, 12A PS §8-317. See Mills v. Jacobs, 333 Pa. 231. As stated by Judge Goodrich, supra:

"It seems clear that property left in a state at the death of the owner is subject to that state's control, no matter where the domicile of the owner happened to be. Appointment of a representative at that domicile cannot make him the owner of the property; the law of the situs must do that, if it is to be done. . . . 'Nor can it [the state of domicile] invest the administrator with title to any movable property, except to such as may be found within its limits.' [citing cases]. The state where the property is located may be concerned with it in several ways. One is with regard to taxing the succession. Another is that the property shall, before being distributed, be subjected to the payment

of such claims as creditors may present. Another is that the state may claim it as bona vacantis, if there are no next of kin. And, finally, the state may, though it seldom does, insist that it be distributed according to its rules, regardless of the domicile of the decedent. . . ."

This brings us to section 1101 of the Fiduciaries Act of 1949. That section of the act provides, inter alia: "A foreign fiduciary may institute proceedings in the Commonwealth (subject to the conditions and limitations imposed on nonresident suitors generally) and may exercise all the other powers of a similar local fiduciary, but a foreign personal representative shall have no such power when there is an administration in the Commonwealth . . ." and then conditions the foregoing right of the foreign fiduciary upon his filing with the register of the county where the proceeding is instituted, (1) "an exemplified copy of his appointment or other qualification in the foreign jurisdiction . . .", and (2) an affidavit that the "estate of which he is fiduciary is not . . . indebted to any person in the Commonwealth. . . ." The judicial administrator has filed such documents with the Philadelphia Register of Wills.

It is clear that the quoted language of the statute broadens the scope of the powers of a foreign fiduciary to administer the affairs of his decedent in this State. Moreover, it would appear that various causes of action in the common pleas court are available to the foreign fiduciary in connection with such administration. However, we will not here attempt to enumerate the various forms of procedure available to such foreign fiduciaries. We shall limit our inquiry to the jurisdiction of this court.

Without question this court has jurisdiction of estates of foreign decedents in which ancillary admin-

istration has been raised. This appears clearly in the statutes. The Fiduciaries Act of 1949, sec. 102(3), provides that " 'fiduciary' includes personal representatives . . . whether domicilary or ancillary . . ." and the Orphans' Court Act of August 10, 1951, P. L. 1163, gives exclusive jurisdiction to the orphans' court over "the administration and distribution of the real and personal property of decedents' estates" (section 301(1)), and ". . . settlement of the accounts of . . . all fiduciaries of estates and trusts of which the court has jurisdiction . . .": Section 301(6). Clearly, the phrase "decedents' estates" includes all domicilary decedents and foreign decedents where ancillary letters have been granted in Pensylvania. It follows, therefore, that this court unquestionably would have jurisdiction over the instant estate if ancillary letters had been issued.

Petitioner contends, however, that this court has, and should exercise, jurisdiction over this case, without the grant of ancillary letters, under section 1101 of the Fiduciaries Act of 1949, and section 301(13) of the Orphans' Court Act of 1951 which grants to the orphans' court exclusive jurisdiction over "the adjudication of the title to personal property in the possession of the personal representative, or registered in the name of the decedent or his nominee, or alleged by the personal representative to have been in the possession of the decedent at the time of his death."

The classic procedure for adjudicating matters in the orphans' court is at the audit of an account. Such audit is formally advertised in a manner most conducive to give notice to all persons having any interest in the state and to provide them an opportunity for their day in court. Moreover, the accountant is required to send formal notice to all known persons in interest. With *all* parties in interest present or repre-

sented, it is possible for the court to determine all issues at one time. This is the procedure which will be followed if ancillary letters are granted and the account of the ancillary administrator comes before this court for audit.

In contrast, cases on petition and answer in this court and cases in the common pleas court are between specific parties. Other interested parties do not necessarily have any rights in, or notice of, such litigation. For example there has been no advertisement of the pendency of the instant case in this court. Consequently, there is no assurance that all creditors or other claimants in Pennsylvania will receive such notice as to give them an opportunity to present their claims. Hence, this court proceeds by petition and answer in unusual cases, only.

Subsection (2) of section 1101 of the Fiduciaries Act of 1949 protects citizens of Pennsylvania having claims against the estate. It precludes the foreign fiduciary from withdrawing the assets from Pennsylvania and requiring our citizens to travel to a distant forum, in this case, Puerto Rico. The language used in this subsection is that ": . . after diligent search and inquiry, the estate of which he is fiduciary is not, to his knowledge or so far as he has been able to discover, indebted to any person in the Commonwealth. . . ." This is the language of the affidavit filed with the register by the judicial administrator. The word "indebted" in its narrow sense means a debt owed a creditor. However, this is a court with equitable powers. It is not only our right, but our duty, to exercise those powers to protect citizens of this Commonwealth in the determination and enforcement of their claims of every kind and nature against the foreign decedent's estate. This is particularly true in a claim involving title, which is a technical matter, and should be decided by proper procedure.

Rae Fischer is a resident of Pennsylvania. Several of the stock certificates in the possession of the Girard Trust Corn Exchange Bank are registered in the joint names of decedent and Rae Fischer "as joint tenants with right of survivorship and not as tenants in common". Under Pennsylvania law, such registration may, or may not, vest title to said certificates in Rae Fischer, as of the moment of decedent's death, depending upon the facts of the case: Martella Estate, 390 Pa. 255. Those facts can best be brought out at an audit. Moreover, there may well be a question of conflict of laws involved, as decedent died a resident of Puerto Rico and the judicial administrator was appointed by its courts. Rae Fischer is entitled to have the question of her title to these certificates determined in Pennsylvania and not be required to undergo the expense and effort of following these certificates to Puerto Rico. This is so, although Rae Fischer's claim is not technically "a debt". The appropriate method of determining her rights is at an audit of an account in this court.

It follows, therefore, that the preferable procedure to determine the issues here involved is not by petition and answer under section 1101 of the Fiduciaries Act of 1949, but by the grant of ancillary administration. See Stambach's Estate, 10 D. & C. 539. The bank or some other eligible party should apply for ancillary letters. The granting of such ancillary letters would strip the judicial administrator of any power to bring suit in the court of common pleas as under section 1101 of the Fiduciaries Act of 1949 he has "no such power when there is an administration in the Commonwealth". The issues would then be determined in the orphans' court upon the account of the ancillary administrator, without the complicating factor of the pendency of separate actions brought by the judicial administrator in the court of common pleas, and after ample notice to all persons who may have any interest

in the estate. We do not need to decide at this time whether this court has *power* to proceed in the manner requested within its statutory powers. See McGovern's Estate, 322 Pa. 379. The court, following long established policy, refuses to exercise its discretion to proceed in the manner requested.

Accordingly, the preliminary objections are sustained, without prejudice, however, to the right of any proper party to apply for issuance of ancillary letters of administration in decedent's estate and to raise the questions presented in the instant petition at the audit of the account of the ancillary administrator.