UNITED STATES of America ex rel. MASTER–KRETE, INC., Plaintiff,

v.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant and Third-Party Plaintiff,

v.

J. O'Connell HOUGH, Third-Party Defendant,

State Bank and Trust Company of Wellston, Wellston, Missouri, Garnishee.

No. 1761.

United States District Court
W. D. Missouri, S. D.

July 29, 1965.

Herbert E. Barnard, Barnard, Timm & McDaniel, St. Louis, Mo., for Garnishor.

Theodore Beezley, Springfield, Mo., for J. O'Connell Hough.

Glenn A. Burkart, Mann, Walter, Powell & Burkart & Weathers, Springfield, Mo., for Fidelity & Deposit Co.

Philip Gallop, St. Louis, Mo., for State Bank & Trust Co. of Wellston.

JOHN W. OLIVER, District Judge.

This case, the facts of which are stipulated, presents the question of whether, under the applicable Missouri law, a judgment debtor's equity in shares of stock of an Indiana corporation is subject to garnishment in aid of a writ of execution issued on behalf of a judgment creditor of this Court. We hold that it is, for reasons we shall state.

The file and records of this Court and the stipulation of the parties establish that on October 1, 1962 Fidelity and Deposit Company of Maryland recovered judgment in this Court against J. O'Connell Hough for $22,432.50. Our Clerk, pursuant to a praecipe filed by Fidelity and Deposit, issued a writ of execution on September 14, 1964. The return of the Marshal certifies that execution was had by the levy of writs of garnishment on four Missouri banks, including the State Bank and Trust Company of Wellston, Wellston, Missouri.

The usual interrogatories were served, answered and denied. J. O'Connell Hough moved to intervene in the garnishment proceeding. We have doubt as to whether Hough need again be made a party to the general litigation, but we see no harm in sustaining the present motion for the record. For the record, Hough's motion to intervene is sustained.

The stipulation of the parties, among other things, states:

At the time of the service of the writ of garnishment upon State

Bank and Trust Company of Wellston, garnishee herein, J. O'Connell Hough was indebted to the State Bank and Trust Company of Wellston in the amount of $41,411.02 together with interest thereon from October 19, 1964, at the rate of 6% per annum; said amount was evidenced by a negotiable promissory note executed by J. O'Connell Hough maturing January 31, 1965.

Said indebtedness is secured by (a) the collateral pledge of 8625 shares of capital common stock of First United Life Insurance Company in the name of J. O'Connell Hough, said certificates are in the name of J. O'Connell Hough and no other persons, and a stock power or power of attorney is attached to each of them endorsed by J. O'Connell Hough; (b) a $10,000.00 first deed of trust and principal note secured thereby on certain real estate in Jefferson County, Missouri, said note was endorsed in blank by Charles W. Sunderman, the payee therein; and is also secured by (c) a $25,000.00 second deed of trust and note secured thereby on real estate in St. Louis County, Missouri, and known as Old Jamestown Road, Route 2, Box 484, Florissant, Missouri, and said note is endorsed in blank by Charles W. Sunderman payee therein.

Photostat copies of the above note and the collateral securing same is attached hereto and made a part hereof.

Fidelity and Deposit contends that Hough's equity in the personal property, particularly in the 8625 shares of insurance company stock, over and above the $41,411.02 note owed by Hough to the Bank of Wellston is subject to garnishment. All parties are agreed that the value of the insurance stock was the price quoted by Wall Street Journal, or $79,-781.25. It is therefore apparent that if Hough's equity is subject to garnishment in aid of execution, Fidelity and Deposit will be able to collect its judgment.

Both the Bank of Wellston and Hough contend that under applicable Missouri law (see Rule 64 of the Rules of Civil Procedure) neither the shares of insurance stock nor Hough's equity in those shares is subject to the execution and garnishment. The answers to the questions presented, of course, are controlled by Missouri law. The proceedings taken in this case were taken under statutes that are not now effective; but, as we shall later note, the repeal of Section 403.170 by the Uniform Commercial Code does not affect the result of the case.

■ No Missouri court has passed on the precise questions presented. We therefore rule the questions as we believe a Missouri court would rule them.

The garnishments in aid of execution were served pursuant to Section 403.170, Revised Statutes of Missouri, 1959, V.A.M.S. The first part of the now repealed Section 403.170 provided:

> In addition to the remedies provided by sections 513.115 and 513.-120, RSMo 1949, providing for attachment or execution upon shares of stock, attachment or execution against shares of stock for which a certificate is outstanding shall be valid when such certificate is actually seized by the officer levying the attachment or execution against other personal property; provided, that a levy of attachment or execution resulting in actual seizure of such certificate shall take precedence over all other remedies provided by law when made at substantially the same time as such other levy, and prompt notice thereof given to the corporation issuing such shares.

That part of Section 403.170 was a modification of Section 13 of the Model Uniform Stock Transfer Act. The remainder of now repealed Section 403.170 provided:

> In case of levy under said sections 513.115 and 513.120, RSMo 1949, the innocent holder for and without notice of any certificate of

shares of stock subject to such levy may, in addition to the assertion of claim as now provided for under section 513.130, RSMo 1949, notify the corporation issuing such shares that he has acquired rights to the certificate therefor, and in the event that such notice shall be so given prior to actual sale of said shares of stock under execution, it shall be the duty of the corporation to forthwith notify the officer making the levy or attachment, of the assertion of such adverse claim and such notice to such officer shall act as a stay of further proceedings in connection with such attachment or levy, and it shall thereupon be the duty of the party asserting such claim to promptly obtain an adjudication of the rights of the parties. Until such rights are adjudicated the corporation shall not be compelled to issue a new certificate for such shares of stock until the old certificate is surrendered to it.

Only one reported Missouri case was decided during the life of the above statute. That case was State ex rel. North American Company v. Koerner, (Mo.Sup. 1948) 357 Mo. 908, 211 S.W.2d 698, appeal dismissed 335 U.S. 803, 69 S.Ct. 57, 93 L.Ed. 860. That case makes clear that Missouri did not initially adopt Section 13 of the Model Uniform Stock Transfer Act as proposed by the Commissioners on Uniform Laws. The enactment of Section 400.8–317 of the Uniform Commercial Code does accept what was formerly Section 13 of the Model Uniform Stock Transfer Act, without any modification of substance. The execution and garnishment in this case, however, having been made under the now repealed Section 403.170, must be ruled under that statute rather than the present Section 400.8–317.

The result in this case will not be different because we are convinced that the Missouri courts would hold that the interest in Hough's shares of stock may be subjected to levy under either statute.

■ The point of beginning, of course, is whether Hough's equity may in any event be reached. Since 1866, the Missouri courts have recognized that a judgment debtor's equity in personal property could be reached. The early case of Foster v. Potter, (Mo.Sup.1866), 37 Mo. 525, noted that the shares of insurance company stock there involved "were levied upon under executions issued· upon general judgments, and sold and conveyed to Potter, in pursuance of the statute." The judgment debtor had, before the execution, pledged the shares of stock to secure certain notes by way of a "deed of trust in the nature of a mortgage."

The Missouri Supreme Court noted that "if the defendant had been the absolute owner of the shares at the time of the levy, there could have been no doubt that the purchaser would acquire a good title by his purchase at the sheriff's sale."

The court expressly held in that case that the fact that the shares were pledged as collateral did not take them out of the operation of the applicable statutes. Specifically, the court held that the encumbered property "could properly be levied upon under the statute relating to executions, subject to the existing encumbrances; and that the sale and conveyance by the sheriff passed to the purchaser the property in these shares, subject only to the prior deed of trust." See also Tufts v. Volkening, (St.L.Ct. App.1892) 51 Mo.App. 7, affirmed 122 Mo. 631, 27 S.W. 522 (1894).

Discussion of additional Missouri cases is unnecessary because the Missouri authorities cited by Hough and the Bank of Wellston either expressly recognize the authority of Foster v. Potter, or are clearly distinguishable. State ex rel. Missouri Poultry & Game Co. v. Nolte, (Mo.Sup.Ct.1918) 203 S.W. 956 at 959, for example, states that Foster v. Potter does in fact hold that "the interest of a mortgagor in shares of corporate stock is subject to sale under execution." Armour Bros. Banking Co.

**23**

v. Smith, (Mo.Sup.Ct.1892) 113 Mo. 12, 20 S.W. 690 at 691 recognized the authority of Foster v. Potter. The early case of Sexton v. Monks, (Mo.Sup.1852) 16 Mo. 156, and Evens & Howard Fire Brick Co. v. Gammon, (Spr.Ct. of App. 1918), 204 S.W. 832 (which makes a loose reference to Sexton v. Monks) are both distinguishable.

The statutes utilized in Foster v. Potter have been carried forward in substance in all succeeding Missouri statutory revisions. Those statutes presently appear as Sections 513.115 and 513.120 of the 1959 Revised Statutes of Missouri, V.A.M.S.

The Koerner case was not concerned with the effectiveness of the first part of former Section 403.170 which provided that "in addition to the remedies provided by sections 513.115 and 513.120 * * * attachment or execution against shares of stock for which a certificate is outstanding shall be valid when such certificate is actually seized by the officer levying the attachment or execution against other personal property * * *." It was that part of Section 403.170 that was utilized in the case at bar. Although Koerner did not directly deal with the additional remedy provided in the first part of Section 403.170, Koerner must be examined closely because it reflects the judicial attitude of the Supreme Court of Missouri toward the entire section.

The Koerner case held that the legislative creation of an additional remedy and method of attachment or execution upon shares of stock by Section 403.170 did not either repeal the other methods or was such action "so contradictory as to destroy the remainder of the Transfer Act as adopted by our legislature" (l. c. 704 of 211 S.W.2d).

While what the Supreme Court of Missouri said about the situs of a certificate of stock is largely dictum so far as any specific construction of Section 403.170 is concerned, the rationale of Koerner relating to situs is generally controlling. We must also look to authoritative commentaries in law reviews as aids in our determination of Missouri law.

On page 493 of Volume 21 of Vernon's Annotated Missouri Statutes, an article entitled "Uniform Stock Transfer Act in Missouri," 1951 Wash.U.L.Q. 384 (June, 1951), is quoted from extensively. That article points out that when the amendments were made by Missouri to recommended Section 13 of the Model Uniform Stock Transfer Act, "the Missouri legislature chose to retain the rule that attachment might be made by notice to the corporation, making the seizure of the certificate an additional preferred, but not essential, method."

In order to accomplish that end, the Missouri legislature, as Koerner clearly intimates, partially rejected the theory of the Model Act which endeavored to give stock certificates the full characteristics of a negotiable instrument. Koerner held that the Missouri legislature, in effect, accepted the concept that a stockholder's interest is not embodied in the certificate itself when it modified Section 13 of the Model Act. The law review article suggests that "although the debates of the Missouri legislature are not available, apparently the members felt that the Model Act insufficiently protected the interests of creditors."

Regardless of the reason for the action, Koerner makes clear that "the old doctrine that a certificate of stock is merely evidence of the holder's property interest in the corporation with its situs in the state of the corporation's domicile" was to be considered the law of Missouri in any construction of old Section 403.-170. Whether the same thing can now be said in light of new Section 400.8–317 is a problem we do not reach in this case.

The acceptance and retention of that theory under old Section 403.170, however, requires that we follow the rule of decision that a Missouri court must, in our application of old Section 403.170, look to the law of the state of incorporation, in this case, the State of Indiana, to determine whether the shares of stock

can be subjected to legal process outside of that state of incorporation.[1]

Case law need not be cited from Indiana because that State has adopted the Uniform Commercial Code in its entirety which contains what was formerly Section 13 of the Model Uniform Stock Transfer Act. See Burns' Annotated Indiana Statutes, Section 19–1–101 et seq.

■ Under the theory of Section 13 of the Model Uniform Stock Transfer Act (now an integral part of the Uniform Commercial Code), the stockholder's share is embodied in the certificate of stock and that share, accordingly may be attached outside the state of incorporation.

Mills v. Jacobs, 333 Pa. 231, 4 A.2d 152, 122 A.L.R. 333 (1939), illustrates the impact of the law of the state of incorporation on levys made by other states. The facts in that case are identical with the facts in the case at bar except that the judgment debtor had pledged one stock certificate of a Virginia corporation and three certificates of Delaware corporations.

Virginia, like Indiana in our case, had passed the Uniform Stock Transfer Act; Delaware's statute, on the other hand, specifically provided that for purposes of attachment and garnishment "the situs of the ownership of the capital stock of all [Delaware] corporations * * * shall be regarded as in this State."

The Pennsylvania court, applying the principles of law recognized by Missouri, held that the equity in the certificate in the Virginia corporation was subject to attachment but that the Delaware certificates were not. See also the more recent Crane v. Crane, 373 Pa. 1, 95 A.2d 199 (1953).

■ We are convinced that the Missouri courts would follow the theory of Mills v. Jacobs; we shall therefore do the same thing. Judgment in favor of the judgment creditor will therefore be entered.

In a not dissimilar case, United States v. Schuermann, E.D.Mo.1952, 106 F. Supp. 86, the late Judge Hulen held that the Koerner case authorized the seizure of certificates of the capital stock of a domestic corporation in a suit that was "in the nature of a garnishment proceeding" to collect an internal revenue tax levy.

Suggestions as to the form of decree to be entered in that case appear on page 89 of 106 F.Supp. Counsel have suggested informally that the sale of the amount of stock here involved may involve some complicating problems. The Bank of Wellston has also stated in its brief that it does not deny the right of the judgment creditor to attach a checking account in the amount of $1,938.90.

In order that a judgment and decree may be entered that will have the least adverse effect on the market and in order to arrange for early payment of the checking account, the parties are directed to confer and submit a decree within fifteen (15) days consistent with what we have here determined and suggested. Provision shall also be made for the allowance of fees, subject to our subsequent approval.

It is so ordered.

---

1. Koerner's citation of Judge Learned Hand's opinion in Direction Der Disconto-Gesellschaft v. U. S. Steel Corp., S.D. N.Y.1924, 300 F. 741, demonstrates Missouri's acceptance of the rule of decision stated above. The opinion of Mr. Justice Holmes, affirming Judge Hand, is reported in 267 U.S. 22, 45 S.Ct. 207, 69 L.Ed. 495 (1925) and those decisions are the foundation for Section 53 of the Restatement of Conflicts (see Reporter's Note, page 103 of Tentative Draft No. 7 (as revised) to the Restatement of Conflicts, Second (1963)). We must also recognize that Missouri courts, generally speaking, follow the Restatement of the Law of Conflicts. For a collection of cases, see Annotation entitled "Situs of Corporate Stock (or stock in joint stock company) for purposes of attachment, garnishment, or execution," 122 A.L.R. 338.